ROUSEY ET UX. *v.* JACOWAY

No. 03–1407.   Argued December 1, 2004—Decided April 4, 2005

THOMAS, J., delivered the opinion for a unanimous Court.

*Pamela S. Karlan* argued the cause for petitioners. With her on the briefs were *Thomas C. Goldstein, Amy Howe, Claude R. Jones,* and *G. Eric Brunstad, Jr.*

*Colli C. McKiever* argued the cause for respondent. With her on the brief were *Jill R. Jacoway, pro se, Seth P. Waxman, Craig Goldblatt,* and *Jorian Rose.**

JUSTICE THOMAS delivered the opinion of the Court.

The Bankruptcy Code permits debtors to exempt certain property from the bankruptcy estate, allowing them to retain those assets rather than divide them among their creditors. 11 U. S. C. § 522. The question in this case is whether debtors can exempt assets in their Individual Retirement Accounts (IRAs) from the bankruptcy estate pursuant to § 522(d)(10)(E). We hold that IRAs can be so exempted.

I

Petitioners Richard and Betty Jo Rousey were formerly employed at Northrup Grumman Corp. At the termination of their employment, Northrup Grumman required them to take lump-sum distributions from their employer-sponsored pension plans. *In re Rousey,* 283 B. R. 265, 268 (Bkrtcy. App. Panel CA8 2002); Brief for Petitioners 2. The Rouseys deposited the lump sums into two IRAs, one in each of their names. 283 B. R., at 268.

The Rouseys' accounts qualify as IRAs under a number of requirements imposed by the Internal Revenue Code. Each account is "a trust created or organized in the United States for the exclusive benefit of an individual or his beneficiaries." 26 U. S. C. § 408(a) (2000 ed. and Supp. II). The In-

---

*\*Patricia J. Kaeding, Brady C. Williamson, Elizabeth Warren, Jean Constantine-Davis, Nina F. Simon,* and *Michael R. Schuster* filed a brief for AARP as *amicus curiae* urging reversal.

ternal Revenue Code limits the types of assets in which IRA-holders may invest their accounts, §§ 408(a)(3), (a)(5), and provides that the balance in IRAs is nonforfeitable, § 408(a)(4). It also caps yearly contributions to IRAs. § 408(o)(2). Withdrawals made before the accountholder turns 59½ are, with limited exceptions, subject to a 10-percent tax penalty. § 72(t).

IRA contributions receive favorable tax treatment. In particular, the Internal Revenue Code generally defers taxation of the money placed in IRAs and the income earned from those sums until the assets are withdrawn. See § 219(a) (contributions to IRAs are tax deductible); § 408(e)(1) (IRA is tax exempt). Moreover, within a certain timeframe accountholders can, as the Rouseys did here, roll over distributions received from other retirement plans. § 408(a)(1). The Internal Revenue Code encourages such rollovers by making them nontaxable. §§ 408(d)(3), 402(c)(1), 403(b)(8), and 457(e)(16).

The Rouseys' IRA agreements, as well as relevant regulations, provide that their "entire interest in the custodial account must be, or begin to be, distributed by" April 1 following the calendar yearend in which they reach age 70½. *In re Rousey*, 275 B. R. 307, 310 (Bkrtcy. Ct. WD Ark. 2002). The IRA agreements permit withdrawal prior to age 59½, but note the federal tax penalties applicable to such distributions. *Id.*, at 311.

Several years after establishing their IRAs, the Rouseys filed a joint Chapter 7 bankruptcy petition in the United States Bankruptcy Court for the Western District of Arkansas. In the schedules and statements accompanying their petition, the Rouseys sought to shield portions of their IRAs from their creditors by claiming them as exempt from the bankruptcy estate pursuant to 11 U. S. C. § 522(d)(10)(E). This exemption provides that a debtor may withdraw from the bankruptcy estate his "right to receive—

"(E) a payment under a stock bonus, pension, profit-sharing, annuity, or similar plan or contract on account of illness, disability, death, age, or length of service, to the extent reasonably necessary for the support of the debtor and any dependent of the debtor . . . ."

The Bankruptcy Court appointed respondent Jill R. Jacoway as the Chapter 7 Trustee. As Trustee, Jacoway is responsible for overseeing the liquidation of the bankruptcy estate and the distribution of the proceeds. She objected to the Rouseys' claim for the exemption of their IRAs and moved for turnover of those sums to her. The Bankruptcy Court sustained Jacoway's objection and granted her motion. 275 B. R., at 309.

The Rouseys appealed. The Bankruptcy Appellate Panel (BAP) agreed with the Bankruptcy Court that the Rouseys could not exempt their IRAs under § 522(d)(10)(E). It concluded that the IRAs were not "'similar plan[s] or contract[s]'" to stock bonus, pension, profitsharing, or annuity plans, because, by contrast to the limited access permitted in such plans, the Rouseys had "unlimited access" to the funds held in their IRAs. 283 B. R., at 272. That access also meant, the BAP reasoned, that the Rouseys had complete control over the funds in their IRAs, "subject only to a ten percent tax penalty." *Id.*, at 273. Because they had such control, the payments from the IRAs were not "on account of any factor listed in 11 U. S. C. § 522(d)(10)(E)." *Ibid.*

The Rouseys again appealed, and the Court of Appeals for the Eighth Circuit affirmed. The Court of Appeals concluded that, even if the Rouseys' IRAs were "'similar plans or contracts'" to stock bonus, pension, profitsharing, or annuity plans, their IRAs gave them no right to receive payment "'on account of age.'" *In re Rousey*, 347 F. 3d 689, 693 (2003). Like the BAP, the Court of Appeals reasoned that

the Rouseys' right to payment was conditioned neither on age nor on any of the other statutory factors. Their IRAs were instead "readily accessible savings accounts of which the debtors may easily avail themselves (albeit with some discouraging tax consequences) at any time for any purpose." *Ibid.* The Court of Appeals recognized that several of its sister Circuits had reached a contrary result. *Ibid.* See *In re Brucher*, 243 F. 3d 242, 243–244 (CA6 2001); *In re Mc-Kown*, 203 F. 3d 1188, 1190 (CA9 2000); *In re Dubroff*, 119 F. 3d 75, 78 (CA2 1997); *In re Carmichael*, 100 F. 3d 375, 378 (CA5 1996).

We granted certiorari to resolve this division among the Courts of Appeals regarding whether debtors can exempt IRAs from the bankruptcy estate under 11 U. S. C. § 522(d)(10)(E).   541 U. S. 1085 (2004).

## II

As a general matter, upon the filing of a petition for bankruptcy, "all legal or equitable interests of the debtor in property" become the property of the bankruptcy estate and will be distributed to the debtor's creditors. § 541(a)(1). To help the debtor obtain a fresh start, the Bankruptcy Code permits him to withdraw from the estate certain interests in property, such as his car or home, up to certain values. See, *e. g.*, § 522(d); *United States* v. *Security Industrial Bank*, 459 U. S. 70, 72, n. 1 (1982). In this case, the Rouseys claimed their IRAs as exempt under § 522(d)(10)(E). Under the terms of the statute, see *supra*, at 323–324, the Rouseys' right to receive payment under their IRAs must meet three requirements to be exempted under this provision: (1) The right to receive payment must be from "a stock bonus, pension, profitsharing, annuity, or similar plan or contract"; (2) the right to receive payment must be "on account of illness, disability, death, age, or length of service"; and (3) even then, the right to receive payment may be exempted only

"to the extent" that it is "reasonably necessary [to] support" the accountholder or his dependents. § 522(d)(10)(E).

The dispute in this case is whether the Rouseys' IRAs fulfill the first and second requirements. This Court implied that IRAs like the Rouseys' satisfy both elements in *Patterson* v. *Shumate*, 504 U. S. 753 (1992). There, in construing another section of the Bankruptcy Code, this Court stated that IRAs could be exempted pursuant to § 522(d)(10)(E). *Id.*, at 762–763 ("Although a debtor's interest [in an IRA] could not be excluded under § 541(c)(2) . . . , that interest nevertheless could be exempted under § 522(d)(10)(E)" (footnote omitted)). We now reaffirm that statement and conclude that IRAs can be exempted from the bankruptcy estate pursuant to § 522(d)(10)(E).

## A

We turn first to the requirement that the payment be "on account of illness, disability, death, age, or length of service." *Ibid.* We have interpreted the phrase "on account of" elsewhere within the Bankruptcy Code to mean "because of," thereby requiring a causal connection between the term that the phrase "on account of" modifies and the factor specified in the statute at issue. *Bank of America Nat. Trust and Sav. Assn.* v. *203 North LaSalle Street Partnership*, 526 U. S. 434, 450–451 (1999). In reaching that conclusion, we noted that "because of" was "certainly the usage meant for the phrase at other places in the [bankruptcy] statute," including the provision at issue here—§ 522(d)(10)(E). *Ibid.* This meaning comports with the common understanding of "on account of." See, *e. g.*, Random House Dictionary of the English Language 13 (2d ed. 1987) (listing as definitions "by reason of," "because of"); Webster's Third New International Dictionary 13 (1981) (hereinafter Webster's 3d) (same). The context of this provision does not suggest that Congress deviated from the term's ordinary meaning. Thus, "on account of" in § 522(d)(10)(E) requires that the right to receive

payment be "because of" illness, disability, death, age, or length of service.

Jacoway argues that the Rouseys' right to receive payment from their IRAs is not "because of" these listed factors. In particular, she asserts that the Rouseys can withdraw funds from their IRAs for any reason at all, so long as they are willing to pay a 10-percent penalty. Thus, Jacoway maintains that there is no causal connection between the Rouseys' right to payment and age (or any other factor), because their IRAs provide a right to payment on demand.

We disagree. The statutes governing IRAs persuade us that the Rouseys' right to payment from IRAs is causally connected to their age. Their right to receive payment of the entire balance is not in dispute. Because their accounts qualify as IRAs under 26 U. S. C. § 408(a) (2000 ed. and Supp. II), the Rouseys have a nonforfeitable right to the balance held in those accounts, § 408(a)(4). That right is restricted by a 10-percent tax penalty that applies to withdrawals from IRAs made before the accountholder turns 59½. Contrary to Jacoway's contention, this tax penalty is substantial. The deterrent to early withdrawal it creates suggests that Congress designed it to preclude early access to IRAs. The low rates of early withdrawals are consistent with the notion that this penalty substantially deters early withdrawals from such accounts.[1] Because the 10-percent penalty applies pro-

---

[1] See Amromin & Smith, What Explains Early Withdrawals from Retirement Accounts? Evidence From a Panel of Taxpayers, 56 Nat. Tax J. 595, 602 (Sept. 2003) (Table 1) (3.4 percent of IRA-holders took penalized withdrawals in 1996); In re Cilek, 115 B. R. 974, 988, n. 15 (Bkrtcy. Ct. WD Wis. 1990) ("[O]f the $6,457,306,674 deposited in IRAs in the nation's credit unions, only 1.2% was withdrawn early and suffered a tax penalty during 1987, and only 1.27% was withdrawn during 1988"); see also Sabelhaus, Projecting IRA Balances and Withdrawals, 20 Employee Benefit Research Institute Notes 1, 3 (May 1999) (finding that "[t]he pattern in both [1993 and 1996] suggests infrequent withdrawals from IRAs" by those under 59½ and noting the consistency of this pattern with the view that the penalty "has a big impact on withdrawal behavior").

portionally to any amounts withdrawn, it prevents access to the 10 percent that the Rouseys would forfeit should they withdraw early, and thus it effectively prevents access to the entire balance in their IRAs.[2] It therefore limits the Rouseys' right to "payment" of the balance of their IRAs. And because this condition is removed when the account-holder turns age 59½, the Rouseys' right to the balance of their IRAs is a right to payment "on account of" age.[3] The Rouseys no more have an unrestricted right to payment of the balance in their IRAs than a contracting party has an unrestricted right to breach a contract simply because the price of doing so is the payment of damages.[4] Accordingly,

---

[2] We need not and do not reach the question whether penalties of less than 10 percent or of a fixed amount would also be a sufficient barrier to early withdrawal.

[3] The Rouseys are entitled to penalty-free distributions because of factors apart from age in certain circumstances. See 26 U. S. C. §§ 72(t)(2)(A)(ii)–(iv) (permitting penalty-free distributions due to the death of or disability of the IRA-holder, or as substantially equal periodic payments for the life expectancy of the accountholder); § 72(t)(2)(B) (medical expenses); §§ 72(t)(2)(D)–(F) (health insurance premiums, certain higher education expenses, and first-time home purchase). But these circumstances are confined to specific and narrow uses. See *infra*, at 332–334. Thus, that there are other circumstances in which the Rouseys can receive payment does not change our conclusion that they have a right to payment on account of age, for these exceptions do not undermine the fact that they cannot obtain unrestricted use of their funds until age 59½. Moreover, § 522(d)(10)(E) requires that the right to payment be on account of age—not that it be solely on account of this factor.

[4] *O'Gilvie* v. *United States*, 519 U. S. 79 (1996), and *Commissioner* v. *Schleier*, 515 U. S. 323 (1995), upon which Jacoway relies, Brief for Respondent 17–19, are consistent with our conclusion that petitioners' IRAs satisfy the statute's "on account of" requirement. Those cases involved the meaning of the phrase "on account of" in a tax provision that permitted the exclusion from income of damages received "'on account' of personal injuries." *O'Gilvie, supra*, at 81 (emphasis deleted); *Schleier, supra*, at 329. In both cases, we rejected the claim that damages that were punitive in nature were on account of personal injuries, since such damages did not compensate for the personal injuries. *O'Gilvie, supra*, at 83–84; *Schleier, supra*, at 331–332. In so holding in *O'Gilvie*, we ex-

we conclude that the Rouseys' IRAs provide a right to payment on account of age.

B

In addition to requiring that the IRAs provide a right to payment "on account of" age or one of the other factors listed in the statute, 11 U. S. C. § 522(d)(10)(E) also requires the Rouseys' IRAs to be "stock bonus, pension, profitsharing, annuity, or similar plan[s] or contract[s]." No party contends that the Rouseys' IRAs are stock bonus, pension, profitsharing, or annuity plans or contracts. The issue, then, is whether the Rouseys' IRAs are "similar plan[s] or contract[s]" within the meaning of § 522(d)(10)(E). To be "similar," an IRA must be like, though not identical to, the specific plans or contracts listed in § 522(d)(10)(E), and consequently must share characteristics common to the listed plans or contracts. See American Heritage Dictionary of the English Language 1206 (1981) (hereinafter Am. Hert.); Webster's 3d 2120.

The Rouseys contend that IRAs are "similar" to stock bonus, pension, profitsharing, or annuity plans or contracts, in that they have the same "primary purpose," namely, "enabl[ing] Americans to save for their retirement." Reply Brief for Petitioners 13. Jacoway counters that IRAs are unlike the listed plans because those plans provide "deferred compensation," Brief for Respondent 22, whereas IRAs allow complete access to deposited funds and are therefore not deferred at all, id., at 22–24. We agree with the Rouseys that IRAs are similar to the plans specified in the statute. Those plans, like the Rouseys' IRAs, provide a substitute for wages (by wages, for present purposes, we mean compensation earned as hourly or salary income), and are not mere savings accounts. The Rouseys' IRAs are there-

pressly rejected a "but for" causation reading of the statute. See 519 U. S., at 82–83. We instead concluded, as we have here, that the phrase "on account of" means "'by reason of[, or] because of.'" Id., at 83.

fore "similar plan[s] or contract[s]" within the meaning of § 522(d)(10)(E).

We turn first to the characteristics the specific plans and contracts listed in § 522(d)(10)(E) share. The Bankruptcy Code does not define the terms "profitsharing," "stock bonus," "pension," or "annuity." Accordingly, we look to the ordinary meaning of these terms. *United States* v. *LaBonte*, 520 U. S. 751, 757 (1997); *Perrin* v. *United States*, 444 U. S. 37, 42 (1979). A "profitsharing" plan, of course, is "[a] system by which employees receive a share of the profits of a business enterprise." Am. Hert. 1045.[5] Profitsharing plans may provide deferred compensation, but they may also be "cash plans" in which a predetermined percentage of the profits is distributed to employees at set intervals. J. Langbein & B. Wolk, Pension and Employee Benefit Law 48 (3d ed. 2000). A stock bonus plan is like a profitsharing plan, except that it distributes company stock rather than cash from profits. *Id.*, at 49.[6] A pension is defined as "a fixed sum . . . paid under given conditions to a person following his retirement from service (as due to age or disability) or to the surviving dependents of a person entitled to such a pension." Webster's 3d 1671.[7] Finally, an annuity is "an amount payable yearly or at other regular intervals . . . for a certain or uncertain period (as for years, for life, or in perpetuity)." *Id.*, at 88.[8]

---

[5] See also 12 Oxford English Dictionary 580 (2d ed. 1989) (OED) ("[T]he sharing of profits, *spec.* between employer and employed"); Webster's 3d 1811 ("[A] system or process under which employees receive a part of the profits of an industrial or commercial enterprise").

[6] See also *id.*, at 2247 (defining "stock bonus" as "a bonus paid to corporation executives and employees in shares of stock").

[7] See also Am. Hert. 970 ("sum of money paid regularly as a retirement benefit or by way of patronage").

[8] See also *id.*, at 54 ("[T]he annual payment of an allowance or income"; "[t]he interest or dividends paid annually on an investment of money"); 1 OED 488 ("[a] yearly grant, allowance, or income," or "[a]n investment of money, whereby the investor becomes entitled to receive a series of equal

The common feature of all of these plans is that they provide income that substitutes for wages earned as salary or hourly compensation. This understanding of the plans' similarities comports with the other types of payments that a debtor may exempt under § 522(d)(10)—all of which concern income that substitutes for wages. See, *e. g.*, § 522(d)(10)(A) ("social security benefit, unemployment compensation, or a local public assistance benefit"); § 522(d)(10)(B) ("a veterans' benefit"); § 522(d)(10)(C) ("disability, illness, or unemployment benefit"); § 522(d)(10)(D) ("alimony, support, or separate maintenance"). But the plans are dissimilar in other respects: Employers establish and contribute to stock bonus, profitsharing, and pension plans or contracts, whereas an individual can establish and contribute to an annuity on terms and conditions he selects. Moreover, pension plans and annuities provide deferred payment, whereas profitsharing or stock bonus plans may or may not provide deferred payment. And while a pension provides retirement income, none of these other plans necessarily provides retirement income. What all of these plans have in common is that they provide income that substitutes for wages.

Several considerations convince us that the income the Rouseys will derive from their IRAs is likewise income that substitutes for wages. First, the minimum distribution requirements, as discussed above, require distribution to begin at the latest in the calendar year after the year in which the accountholder turns 70½. Thus, accountholders must begin to withdraw funds when they are likely to be retired and lack wage income. Second, the Internal Revenue Code defers taxation of money held in accounts qualifying as IRAs under 26 U. S. C. § 408(a) (2000 ed. and Supp. II) until the year in which it is distributed, treating it as income only in such years. §§ 219, 408(e) (2000 ed. and Supp. II). This tax treatment further encourages accountholders to wait until

annual payments, which, except in the case of perpetual annuities, includes the ultimate return of both principal and interest").

retirement to withdraw the funds: The later withdrawal occurs, the longer the taxes on the amounts are deferred. Third, absent the applicability of other exceptions discussed above, withdrawals before age 59½ are subject to a tax penalty, restricting preretirement access to the funds. Finally, to ensure that the beneficiary uses the IRA in his retirement years, an accountholder's failure to take the requisite minimum distributions results in a 50-percent tax penalty on funds improperly remaining in the account. § 4974(a). All of these features show that IRA income substitutes for wages lost upon retirement and distinguish IRAs from typical savings accounts.

We find unpersuasive Jacoway's contention that the IRAs cannot be similar plans or contracts because the Rouseys have complete access to them. At bottom, this contention rests, as did her "on account of" argument, on the premise that the tax penalty imposed for early withdrawal is modest and hence not a true limit on the withdrawal of funds. As explained above, however, that penalty erects a substantial barrier to early withdrawal. *Supra*, at 327–328. Funds in a typical savings account, by contrast, can be withdrawn without age-based penalty.

We also reject Jacoway's argument that the availability of IRA withdrawals exempt from the 10-percent penalty renders the Rouseys' IRAs more like savings accounts. While Jacoway is correct that the Internal Revenue Code permits penalty-free early withdrawals in certain limited circumstances, 26 U. S. C. § 72(t)(2), these exceptions do not reduce the IRAs to savings accounts.

The exceptions are narrow. For example, penalty-free early distributions for health insurance premiums are limited to unemployed individuals who have received unemployment compensation for at least 12 consecutive weeks and have taken those distributions during the same year in which the unemployment compensation is made. § 72(t)(2)(D). These payments are further limited to the actual amount paid for

insurance for the accountholder, his spouse, and his dependents. § 72(t)(2)(D)(iii). The Internal Revenue Code likewise caps the amount of, and sets qualifications for, both the higher education expenses and first-time home purchases for which penalty-free early distributions can be taken. §§ 72(t)(2)(E), 72(t)(7) (higher education expenses); §§ 72(t)(2)(F), 72(t)(8) (home purchases). The Internal Revenue Code also permits penalty-free distributions to a beneficiary on the death of the accountholder or in the event that the accountholder becomes disabled. §§ 72(t)(2)(A)(ii)–(iii).[9]

These exceptions are limited in amount and scope. Even with these carveouts, an early withdrawal without penalty remains the exception, rather than the rule. And as we explained in discussing the "on account of" requirement, withdrawals from other retirement plans receive similar tax treatment.

Our conclusion that the Rouseys' IRAs can be exempt under 11 U. S. C. § 522(d)(10)(E) finds support in clauses (i)–(iii) of § 522(d)(10)(E). These clauses bring into the estate certain rights to payment that otherwise would be exempt under § 522(d)(10)(E). They provide that a right to receive payment cannot be exempt if:

> "(i) such plan or contract was established by or under the auspices of an insider that employed the debtor at

---

[9] The statute also permits penalty-free early withdrawal in the form of substantially equal periodic payments made for the life expectancy of the accountholder. 26 U. S. C. § 72(t)(2)(iv). This exception is likewise limited. If these payments are modified before the accountholder turns 59½ or within five years of the start of those payments, the accountholder must pay not only the taxes that would have been imposed on those previous payments, including the 10-percent penalty, but also interest for the period in which the tax payment was deferred. § 72(q)(3). As a result, if an accountholder uses this exception, he must use only this form of early withdrawal, lest he pay the penalty, taxes, and interest. The statute permits penalty-free withdrawals for medical expenses, which is likewise limited. § 72(t)(2)(B). The amount that can be withdrawn is capped by the amount that can be deducted in a given year. *Ibid.*

the time the debtor's rights under such plan or contract arose;

"(ii) such payment is on account of age or length of service; and

"(iii) such plan or contract does not qualify under section 401(a), 403(a), 403(b) or 408 of the Internal Revenue Code of 1986."

Thus, clauses (i)–(iii) preclude the debtor from using this exemption if an insider established his plan or contract; the right to receive payment is on account of age or length of service; and the plan does not qualify under the specified Internal Revenue Code sections, including the section that governs IRAs, 26 U. S. C. § 408 (2000 ed. and Supp. II).

As a general matter, it makes little sense to exclude from the exemption plans that fail to qualify under § 408, unless all plans that do qualify under § 408, including IRAs, are generally within the exemption. If IRAs were not within 11 U. S. C. § 522(d)(10)(E), Congress would not have referred to them in its exception. *McKown*, 203 F. 3d, at 1190. More specifically, clause (iii) suggests that plans qualifying under 26 U. S. C. § 408 (2000 ed. and Supp. II), including IRAs, are similar plans or contracts. The other sections of the Internal Revenue Code cited in clause (iii)—§§ 401(a), 403(a), and 403(b)—all establish requirements for tax-qualified retirement plans that take the form of, among other things, annuities, profitsharing plans, and stock bonus plans. By grouping § 408 with these other plans that are of the specific types listed in subparagraph (E), clause (iii) suggests that IRAs are similar to them. Thus, the text of these clauses not only suggests generally that the Rouseys' IRAs are exempt, but also supports our conclusion that they are "similar plan[s] or contract[s]" under 11 U. S. C. § 522(d)(10)(E).

\*     \*     \*

In sum, the Rouseys' IRAs fulfill both of § 522(d)(10)(E)'s requirements at issue here—they confer a right to receive

payment on account of age, and they are similar plans or contracts to those enumerated in § 522(d)(10)(E). The judgment of the Court of Appeals is therefore reversed, and the case is remanded for further proceedings consistent with this opinion.

*It is so ordered.*